**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamie Hix, et al., | No. CV-19-00422-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| Boston Scientific Corporation, | |
| Defendant. | |

Before the Court is Defendant Boston Scientific Corporation's ("Boston Scientific") Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 19). Plaintiffs Ms. Jamie Hix ("Ms. Hix") and Mr. Byron Hix ("Mr. Hix") filed a Response (Doc. 22) and Boston Scientific filed a Reply. (Doc. 23).

**I.   BACKGROUND**

Ms. Hix suffered from stress urinary incontinence. (Doc. 16 ¶37). To treat her condition, Ms. Hix choose to have Boston Scientific's Solyx Single Incision Sling System ("Solyx Sling") surgically implanted on November 28, 2016. (*Id.* ¶¶ 5, 37-39). The Solyx Sling is a surgical mesh device that was manufactured, packaged, labeled, marketed, sold, and distributed by Boston Scientific as a treatment for stress urinary incontinence and pelvic organ prolapse. (*Id.* ¶¶ 12-13). The Solyx Sling contains non-absorbable synthetic, monofilament polypropylene mesh. (*Id.* ¶ 14).

After the Solyx Sling was implanted, Ms. Hix alleges that she experienced serious adverse health effects, including chronic pelvic pain, impaired mobility, dyspareunia, and

infections. (*Id.* ¶ 39). On December 19, 2017, Ms. Hix underwent surgery to have the Solyx Sling removed. (*Id.* ¶ 40). She also required Botulinum toxin A injections to her pelvic floor muscles and bilateral pudendal nerve blocks. (*Id.* ¶ 41). Ms. Hix was subsequently diagnosed with Complex Regional Pain Syndrome, Spastic Pelvic Floor Syndrome, and Pudendal Neuralgia, which she alleges were the result of complications from the Solyx Sling. (*Id.* ¶ 42). Ms. Hix continues to receive treatment for chronic pelvic pain and urinary issues. (*Id.*)

Ms. Hix and her husband, Mr. Hix (collectively "Plaintiffs"), filed suit against Boston Scientific in Arizona Superior Court, pleading eleven causes of action. (Doc. 1-3 at 8-42). Boston Scientific removed the case to this Court. (Doc. 1). On March 5, 2019, Plaintiffs filed their First Amended Complaint, pleading eight causes of action: (1) Strict Products Liability for Defective Design; (2) Strict Liability for Manufacturing Defect; (3) Strict Liability for Failure to Warn/Inadequate Warning; (4) Negligence; (5) Negligent Misrepresentation; (6) Breach of Express Warranty; (7) Fraud; and (8) Loss of Consortium. (Doc. 16). Plaintiffs allege that the adverse effects occurred because, at least in part, the polypropylene in the Solyx Sling was biologically incompatible with human tissue. (*Id.* ¶ 14). Plaintiffs also allege that in addition to Ms. Hix, many other women[1] that were implanted with the Solyx Sling experienced serious adverse effects, including chronic pain and functional disabilities. (*Id.* ¶¶ 17-21). Plaintiffs further allege that prior to Ms. Hix, and many other women being implanted with the Solyx Sling, Boston Scientific knew about, but ignored and downplayed the Solyx Sling's health risks and defects and continued to aggressively market and advertise it. (*Id.* ¶¶ 22-36).

On March 19, 2019, Boston Scientific filed the pending Motion to Dismiss.

---

[1] The majority of these cases were consolidated into seven multi-district litigation ("MDLs"), one of which concerned Boston Scientific's transvaginal mesh products, including the Solyx Sling. *See* Pretrial Order ("PTO") # 1, *In re Bos. Sci. Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02326, February 21, 2012, http://www.wvsd.uscourts.gov/MDL/boston/orders.html. However, on June 21, 2018, the judge presiding over the MDLs requested that the Judicial Panel on Multidistrict Litigation no longer transfer cases to the MDLs. *See* PTO # 188, *In re Bos. Sci. Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-02326, June 21, 2018, http://www.wvsd.uscourts.gov/MDL/boston/orders.html.

Plaintiffs filed a Response, and Boston Scientific filed a Reply.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), a cause of action may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. Rule Civ. Proc. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011); *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Faulkner v. ADT Sec. Servs.*, 706 F.3d 1017, 1019 (9th Cir. 2013). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." S*prewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001). To avoid a dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal citations omitted) (quoting *Twombly*, 550 U.S. at 556). The Ninth Circuit has distilled the following principles from *Iqbal* and *Twombly*:

> [(1)] to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[; (2)] the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected

to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice. *Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 761 (9th Cir. 2013). If the court grants a motion to dismiss, then the "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th Cir. 2012).

## III. DISCUSSION

Boston Scientific, pursuant to Rule 12(b)(6), moves to dismiss Plaintiffs' claims for: (1) Strict Liability for Manufacturing Defect (Second Cause of Action); (2) Strict Liability for Failure to Warn/Inadequate Warning (Third Cause of Action); (3) Negligence[2] (Fourth Cause of Action); (4) Negligent Misrepresentation (Fifth Cause of Action); (5) Breach of Express Warranty (Sixth Cause of Action); and (6) Fraud (Seventh Cause of Action).[3] (Doc. 19). Additionally, Boston Scientific argues that Plaintiffs' request for punitive damages should be dismissed. (*Id.*)

### A. Manufacturing Defect Under Strict Liability and Negligence Theories

Boston Scientific argues that Plaintiffs failed to state a claim for manufacturing defect under either strict liability or negligence theories because Plaintiffs failed to identify the specific manufacturing defect in the Solyx Sling that was implanted in Ms. Hix. (Doc. 19 at 3-4).

---

[2] Plaintiffs' negligence claim asserts that Boston Scientific breached its duties to Plaintiff in four respects: (1) failing to exercise reasonable care to prevent the Solyx Sling from creating an unreasonable risk of harm to Ms. Hix; (2) failing to use reasonable care in manufacturing the Solyx Sling; (3) failing to warn physicians, Plaintiffs, and the "general health public" of dangers of the Solyx Sling; and (4) improper advertising, markets, and recommending of the Solyx Sling to physicians. (Doc. 16 at 19-21). Boston Scientific does not move to dismiss Plaintiffs' negligence claim in its entirety; rather, Boston Scientific only moves to dismiss the negligent manufacturing and negligent failure to warn claims (grounds 2 and 3). Accordingly, the Court will not address the remaining negligence claims.

[3] Defendants do not move to dismiss Plaintiffs' claim for Strict Liability for Defective Design (First Cause of Action) or for Loss of Consortium (Eight Cause of Action).

- 4 -

In Arizona, the crux of a manufacturing defect claim is that the defective product differs from the manufacturer's intended result or from other ostensibly identical units of the same product line. *See Spedale v. Constellation Pharm. Inc.*, 2019 WL 3858901, at *15 (D. Ariz. Aug. 16, 2019) ("A plaintiff should compare the injury-inducing product with other non-defective products in the same line"); *Hearn v. R.J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1115 (D. Ariz. 2003). Generally, a manufacturing defect claim posits that the product is flawed as a result of something that went wrong during the manufacturing process, whether or not a suitable design was in place. *See Gomulka v. Yavapai Mach. and Auto Parts, Inc.*, 745 P.2d 986, 988-989 (Ariz. Ct. App. 1987). A plaintiff pursuing a manufacturing defect claim must identify/explain how the product either deviated from the manufacturer's intended result or how the product deviated from other seemingly identical models; thus, a bare allegation that the product had a manufacturing defect is an insufficient legal conclusion. *See Enedina Coronado, et al., v. Costco Wholesale Corp., et al.*, 2019 WL 5448312, at *4 (D. Ariz. Oct. 24, 2019).

According to Boston Scientific, Plaintiffs failed to allege factual allegations as to how Ms. Hix's particular Solyx Sling purportedly deviated from Boston Scientific's intended result or from other identical units of the same product line. (Doc. 19 at 4). In response, Plaintiffs argue that the following allegations in the complaint sufficiently alleged a manufacturing defect: (1) "that the use of polypropylene in the manufacturing process . . . result[ed] in an unwanted immune reaction" and (2) "that the welding of the mesh itself during production, which create[d] a toxic substance that contribute[d] to the degradation of the mesh and host tissue." (Doc. 22 at 6-7). Plaintiffs further argue that they have plead a manufacturing defect claim,"[regardless of whether . . . the Solyx [Sling] differs from other products in the same line," because pursuant to the consumer expectation test the Solyx Sling failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonable manner. (*Id.* at 7-8). The Court disagrees.

Under the consumer expectation test, the fact-finder determines whether the product failed to perform as safely as an ordinary consumer would expect when used in an intended

or reasonable manner. However, in a manufacturing defect case, the consumer expectations are developed from their use of a properly manufactured product of the same design. *Hedding v. Broan-NuTone, Inc.,* 2010 WL 11627611, at *5 (D. Ariz. Jan. 13, 2010) ("Generally, the consumer expectation test works well in manufacturing defect cases where consumers have developed safety expectations from using properly manufactured products of the same general design.") (citing *Golonka v. Gen. Motors Corp.*, 65 P.3d 956, 962 (Ariz. Ct. App. 2003))). Thus, the consumer expectation test has little utility in manufacturing defect cases, such as this one, where the plaintiffs are not alleging that the defective product was ever safely produced. Moreover, the consumer expectation test does not alleviate Plaintiffs' burden from identifying the specific manufacturing defect that Ms. Hix's Solyx Sling purportedly suffered from. Plaintiffs may have identified a defect in the Solyx Sling; however, it is insufficient for Plaintiffs to identify a defect without identifying or explaining how that defect relates to the manufacturing of the product. This is to say, Plaintiffs' summary allegations that the Solyx Sling degraded and fragmented and failed to perform as designed and intended, without explanation as to how those defects are tied to the manufacturing process, do not demonstrate that the Solyx Sling had a manufacturing defect.

Accordingly, Plaintiffs' manufacturing defect claims under the strict liability and negligence theories will be dismissed.

**B.     Failure to Warn Under Strict Liability and Negligence Theories**

Boston Scientific argues that "[t]o the extent [Plaintiffs' failure to warn] claims rely on a duty to warn anyone other than Ms. Hix's prescribing physician," pursuant to Arizona's learned intermediary doctrine, Plaintiffs have failed to state a claim for failure to warn under either a strict liability or negligence theory. (Doc. 19 at 4). Arizona's learned intermediary doctrine holds that "a manufacturer satisfies its duty to warn end users by giving appropriate warnings to the specialized class of persons who may prescribe or administer the product." *Watts v. Medicis Pharm. Corp.*, 365 P.3d 944, 947 (Ariz. 2016). "Under those circumstances, the intermediary (often a treating physician) 'assumes the

duty to pass the necessary warnings on to the end users.'" *Conklin v. Medtronic, Inc.*, 431 P.3d 571, 577 (Ariz. 2018) (quoting *Watts*, 365 P.3d at 948). "The premise for the [learned intermediary doctrine] is that certain types of goods (such as prescription drugs) are complex and vary in effect, depending on the end user's unique circumstances, and therefore can be obtained only through a qualified intermediary like a prescribing physician, who can evaluate the patient's condition and weigh the risks and benefits." *Watts*, 365 P.3d at 949. The learned intermediary doctrine applies to implanted medical devices, and it covers failure to warn claims under both strict liability and negligence theories. *Conklin*, 431 P.3d at 577.

Plaintiffs have sufficiently alleged that Boston Scientific failed to provide adequate warnings to the learned intermediaries, which would include Ms. Hix's physicians. The following allegations from the Amended Complaint illustrate this point:

> 22. Notwithstanding [information regarding the complications of Pelvic Mesh Products], [Boston Scientific] continued to aggressively market and advertise transvaginally placed mesh devices, including the Solyx Sling, as safe and effective. [Boston Scientific] *did not provide adequate warnings to doctors, the health care community* and the general public about the increased risk of serious adverse events associated with transvaginally placed mesh devices. [Boston Scientific] neither halted the sales of transvaginally placed mesh devices nor warned medical professionals or the public of their dangers.
> …
> 31. Upon information and belief, [Boston Scientific] recommended the Pelvic Mesh Products to [Ms. Hix's] surgeon, Dr. Daniel C. Jaffee, as appropriate and safe for the treatment of stress urinary incontinence. [Boston Scientific] *did not warn Dr. Jaffee of the true frequency, severity and permanency of the aforementioned risks caused by the Solyx Sling*. As a consequence, Dr. Jaffee could not provide sufficient material facts about the surgery and the risks of the placement of the Solyx Sling to allow [Ms. Hix] to have a true understanding of the nature of the operation, the seriousness of it, and the possible complications and their likelihood.

(Doc. 16 ¶¶ 22, 31) (emphasis added).

It is true, as Boston Scientific points out, that the Amended Complaint also alleges

1 that Boston Scientific failed to provide adequate warnings to Plaintiffs and the "general
2 public." Plaintiffs' failure to warn claims can only be based on the information provided,
3 or not provided, to Ms. Hix's physicians, not Plaintiffs themselves or the general public.
4 Accordingly, Plaintiffs' failure to warn claims based on the adequacy of information
5 provided to Ms. Hix's physicians will not be dismissed. However, the Court grants Boston
6 Scientific's Motion insofar as it is seeking dismissal of Plaintiffs' failure to warn claims
7 that are premised on Boston Scientific's failure to provide adequate warnings to Plaintiffs
8 and the general public.

### C. Breach of Express Warranty

Boston Scientific argues that Plaintiffs failed to state a claim for breach of an express warranty because Plaintiffs failed to demonstrate privity with Boston Scientific and becasue they failed to identity any affirmation of fact or promise actually made by Boston Scientific. (Doc. 19 at 5). Under Arizona law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." *Dillon v. Zeneca Corp.*, 42 P.3d 598, 602 (Ariz. Ct. App. 2002) (quoting A.R.S. § 47–2313(A)). Of course, "any affirmation that forms the basis of an express warranty must be between the seller and the buyer." *Ramirez v. Medtronic Inc.*, 961 F. Supp. 2d 977, 1001 (D. Ariz. 2013), *clarified on denial of reconsideration* (Oct. 24, 2013). Arizona law has recognized that a claim for breach of express warranty can arise out of an advertisement. *Eck v. Helene Curtis Indus., Inc.*, 453 P.2d 366, 369 (Ariz. Ct. App. 1969).

With respect to Boston Scientific's argument that a patient of an implantable medical product can never be in privity with the manufacturer, the Court disagrees. The crux of Boston Scientific's argument is that in the context of an implantable medical device, the "buyer" is not the patient, but rather the healthcare provider, and therefore, any affirmations by Boston Scientific would have been made to the healthcare provider, not the patient. Boston Scientific solely relies on *Martin v. Medtronic, Inc.*, 63 F. Supp. 3d 1050 (D. Ariz. 2014), for support; however, the court in *Martin* did not hold that there could

never be privity between the product manufacturer and the patient in the context of an implantable medical device. Rather, the court there held that privity does not exist between the patient and the manufacturer if the manufacturer does not make affirmations directly to the patient. *Martin*, 63 F. Supp. 3d at 1061. Accordingly, the court in *Martin* indicated that a breach of express warranty could be brought if the plaintiff was capable of pleading sufficient facts to show that the manufacturer made representations specifically to the plaintiff, rather than just plaintiff's physicians. *Id.* ("In order to state a plausible [breach of express warranty] claim, plaintiffs needed to allege that defendants made affirmations directly to [the plaintiffs], which they have not done.").

Turning to Boston Scientific's second argument, which is that Plaintiffs failed to sufficiently allege that Boston Scientific's affirmations formed the basis of the bargain. (Doc. 19 at 5). Plaintiffs have alleged that Boston Scientific specifically warranted to Ms. Hix and her physicians though advertisements and marketing materials that the Solyx Sling was "safe, and/or safer than other alternative procedures and devices . . . [and] more efficacious than other alternative medications[.]" (Doc. 16 ¶¶ 84-85). Furthermore, Plaintiffs allege that Ms. Hix relied on Boston Scientific's representations when deciding to have the Solyx Sling implanted in her. (*Id.* ¶ 85). This is sufficient to allege that Ms. Hix relied on Boston Scientific's affirmations when deciding to have the Solyx Sling implanted in her.

At this stage, the Court's task is not to determine the truthfulness of these allegations; rather, the Court is tasked with determining if the allegations satisfy the notice pleading requirements of Rule 8. *Fischer v. Bayer Healthcare Pharm. Inc.*, 2019 WL 429878, at *2 (D. Ariz. Feb. 4, 2019). The Court finds that Plaintiffs have sufficiently alleged a breach of express warranty claim. Accordingly, Plaintiffs' breach of express warranty claim will not be dismissed.

### D. Fraud-Related Claims

Plaintiffs pleaded claims for negligent misrepresentation, intentional misrepresentation, and fraudulent concealment. Under Arizona law,

> [t]he elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340 P.3d 405, 412 n.7 (Ariz. Ct. App. 2014). The elements of intentional misrepresentation are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely on it; (9) the hearer's consequent and proximate injury.

*Comerica Bank v. Mahmoodi*, 229 P.3d 1031, 1033 (Ariz. Ct. App. 2010). The elements of fraudulent concealment are:

> (1) the concealment of a material existing fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Coleman v. Watts*, 87 F. Supp. 2d 944, 951–52 (D. Ariz. 1998).

Because each of these causes of action sound in fraud, Plaintiffs must meet the heightened pleading requirements of Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Rule 9(b)'s particularity requirement applies to state-law causes of action."). To plead fraud claims with the particularity required by Rule 9(b), a complaint "must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d

993, 998 (9th Cir. 2010)). Additionally, when the defendant is an entity, a complaint generally must also identify the person who made the false representations on behalf of the entity. *See United States ex. Lee v. SmithKline Beecham*, 245 F.3d 1048, 1051 (9th Cir. 2001).

Plaintiffs argue that the Amended Complaint sufficiently alleges the "who," "what," "when," "where," and "how" of the alleged misconduct. (Doc. 22 at 11-12). The Court disagrees. For the "what" and the "how," the Amended Complaint only generally alleges that Boston Scientific made misrepresentations and concealments about the safety and efficacy of the Solyx Sling to the medical community and the public, including Plaintiffs, through sales and marketing materials. (Doc. 16 ¶¶ 5, 7, 13, 24, 25, 105). These generalized allegations of misrepresentation, concealment, and unspecified sales and marketing materials lack sufficient particularity under Rule 9(b). *See Garcia v. Bos. Sci. Corp.*, 2019 WL 2598716, at *5 (E.D. Cal. June 25, 2019) ("A party is required to identify specific omissions and communications that constitute the fraud; general assertions are insufficient[]"); *Jager v. Davol Inc.*, 2016 WL 6157942, at *6 (C.D. Cal. Oct. 20, 2016) (dismissing plaintiff's fraud claims because "without identifying a specific misrepresentation, the [c]omplaint falls short of the requirements for pleading fraud with particularity. Nothing in the [c]omplaint points to specific content in [d]efendants' marketing materials, or statements made to [plaintiff's] physician—if any—that were allegedly false.").

For the "who," the Amended Complaint fails to identify the particular individuals who made the misrepresentations and concealments. Rather, the Amended Complaint only generally refers to Boston Scientific. (Doc. 22 at 11). This is insufficient. *See White v. J.P. Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1115 (E.D. Cal. 2016) (holding that "for corporate defendants, [p]laintiffs must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.") (internal quotation omitted), *aff'd sub nom. White v. JPMorgan Chase & Co.*, 702 Fed. Appx. 642 (9th Cir. 2017). For the

"when" and the "where," the Amended Complaint alleges that the misrepresentations and concealments occurred between at least 2005 through 2016 and occurred "in Arizona, where [Ms. Hix] lives and where her implanting physician practices, as well as at medical and professional meetings, and other events organized by throughout the country." (Doc. 22 at 11-12). Such allegations fail to provide the requisite particularity. *See Zetz v. Boston Sci. Corp.*, 2019 WL 3235077, at *8 (E.D. Cal. July 18, 2019) (finding that plaintiff had failed to plead with particularity when the complaint generally alleged "that the misrepresentations and concealments occurred sometime 'before' [p]laintiff was implanted with the Product (which was November 12, 2008) and occurred where [p]laintiffs lived, which is somewhere in California.")

Accordingly, Plaintiffs' negligent misrepresentation, intentional misrepresentation, and fraudulent concealment claims will be dismissed.

### E. Punitive Damages Claim

Lastly, Boston Scientific argues that Plaintiffs' request for punitive damages should be dismissed because Arizona law precludes the recovery of punitive damages in a product-liability action where the product was designed, manufactured, packaged, labeled, or sold in accordance with the terms of a governmental agency's approval. (Doc. 19 at 6-7) (citing Ariz. Rev. Stat. Ann. § 12-689(A)(1)). However, there are four statutory exceptions to this punitive damages exemption. *See* Ariz. Rev. Stat. Ann. § 12-689(B). Plaintiffs only argue that exception two to the statute applies here, namely that Boston Scientific withheld or misrepresented material information from the FDA. *See* Ariz. Rev. Stat. Ann. § 12-689(B)(2) ("This section does not apply if the claimant establishes that the manufacturer . . . at any time before the activity or event that allegedly caused the harm, . . . [i]ntentionally, and in violation of applicable regulations as determined by final action of the government agency, withheld from or misrepresented to the government agency information material to the approval or maintaining of approval of the product . . . and the information is relevant to the harm that the claimant allegedly suffered.")

It is undisputed that Boston Scientific sought and obtained clearance from the U.S.

Food and Drug Administration ("FDA") to market and distribute the Solyx Sling. (Doc. 16 ¶ 16). The Amended Complaint contains allegations that Boston Scientific withheld or misrepresented to the FDA information material to the approval or maintaining of approval of the Solyx Sling, and that information was relevant to the harm that Ms. Hix suffered. However, to meet this exception, there must not only be an intentional withholding or misrepresenting of information, but there must also be a determination "by final action of the government agency," in this case the FDA, that such conduct occurred. Ariz. Rev. Stat. Ann. § 12-689(B)(2). The Amended Complaint is devoid of any allegations that there has been a final determination of wrongdoing by the FDA. Accordingly, Plaintiffs have not shown that they are entitled to an exception from the statute precluding the recovery of punitive damages in a product-liability action. *See Craten v. Foster Poultry Farms Inc.*, 2018 WL 834937, at *4 (D. Ariz. Feb. 13, 2018) ("In Arizona, punitive damages are awarded only in the most egregious of cases . . . [and] [i]n enacting § 12-689, Arizona made clear that a manufacturer's conduct does not rise to this level of egregiousness when the product alleged to have caused harm was approved for sale by a government agency."). Therefore, Plaintiffs have not demonstrated that they are entitled to punitive damages and their request for such relief will be dismissed.

IV. **LEAVE TO AMEND**

Plaintiffs seek leave to amend their Amended Complaint. (Doc. 22 at 13-14). Rule 15 makes clear that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In assessing whether leave to amend is proper, courts consider "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citations omitted). The Court will therefore grant Plaintiffs' request for leave to amend. Plaintiffs may amend their complaint, if they have a proper basis for doing so. Accordingly,

**IT IS ORDERED** that Boston Scientific's Motion to Dismiss Plaintiffs' First

Amended Complaint (Doc. 19) is **GRANTED in part** and **DENIED in part**, as follows:

1. Plaintiffs' claim for failure to warn Ms. Hix's physicians under strict liability (third cause of action) and negligence (fourth cause of action) theories and claim for breach of express warranty (sixth cause of action) are not dismissed.

2. Plaintiffs' following claims are dismissed with leave to amend: manufacturing defect under the strict liability theory (second cause of action) and negligence theory (fourth cause of action); negligent misrepresentation (fifth cause of action); and fraud (seventh cause of action).

3. Plaintiffs' failure to warn claim premised on Boston Scientific's failure to provide adequate warnings to Plaintiffs and the general public under strict liability (third cause of action) and negligence (fourth cause of action) theories are dismissed with prejudice.

4. Plaintiffs' request for punitive damages is dismissed.

**IT IS FURTHER ORDERED** that if Plaintiffs wish to file a second amended complaint, they must do so on or before November 22, 2019.

Dated this 14th day of November, 2019.

Honorable Diane J. Humetewa
United States District Judge